UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ANTHONY RUSSO,

Plaintiff(s),

v.

CLARK COUNTY SCHOOL DISTRICT, et al.,

Defendant(s).

Case No. 2:17-CV-805 JCM (VCF)

ORDER

Presently before the court is plaintiff Anthony Russo's ("plaintiff") motion for partial summary judgment.[1] (ECF No. 69). Defendants Clark County School District ("CCSD"), Edward Goldman ("Goldman"), and James Ketsaa ("Ketsaa") (collectively "defendants") filed a response (ECF No. 78), to which plaintiff replied (ECF No. 81).

Also before the court is defendants' motion for summary judgment. (ECF No. 72). Plaintiff filed a response (ECF No. 75), to which defendants replied (ECF No. 82).

**I.    Facts**

Plaintiff brought the instant civil action under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. (ECF No. 49 at 1). Plaintiff seeks damages against defendants for allegedly depriving plaintiff of his due process right to a hearing before being suspended and terminated. (ECF No. 49 at 5–6).

Plaintiff is employed by defendants as a police officer with CCSD Police Department. (ECF No. 69 at 2). Police Officers Association of CCSD (hereafter "POA") is a bargaining agent for all regular status employees. (ECF No. 69 at 2). Plaintiff is a regular status employee. (ECF No. 69 at 2). Under Article 35-1 of the collective bargaining agreement ("CBA") between POA

---

[1] The named plaintiff, Daniel M. Burgess, was terminated from this action on September 25, 2017. (ECF No. 45).

**James C. Mahan**
**U.S. District Judge**

and CCSD, "a Regular Status Employee may be suspended, demoted or dismissed for just cause." (ECF No. 69 at 2).

On September 5, 2015, plaintiff was involved in a car accident with a teenaged driver while off-duty. (ECF No. 72 at 3). After the collision, plaintiff exited his vehicle, walked over to the passenger side of the other vehicle, and began punching the teenaged passenger in the head. (ECF No. 72 at 4). Bystanders attempted to pull plaintiff off the teenager. *Id.* Plaintiff then pulled out his gun. Plaintiff was arrested for suspicion of DUI, possession of a gun under the influence, drawing a deadly weapon in a threatening manner, two counts of battery, and failure to obey a traffic signal. (ECF No. 69 at 3).

On September 9, 2015, plaintiff met with defendant Ketsaa for ten minutes, where he was provided oral notice of the charges against him. (No. 72-1 at 55). After the meeting, plaintiff received a letter from defendant Ketsaa pursuant to Article 35-7 of the CBA between POA and CCSD. (ECF No. 72-1 at 55). The letter informed plaintiff that an administrative investigation was being conducted regarding plaintiff's arrest. (ECF No. 72-1 at 55). The letter provided notice to plaintiff that he was indefinitely suspended without pay pending the outcome of the investigation. (ECF No. 69 at 3).

On September 9, 2015, CCSD also provided plaintiff with a "notification of possible disciplinary action." (ECF No. 72-1 at 57). This letter notified plaintiff of an upcoming interview in which plaintiff was entitled to have two representatives. The representatives could be lawyers, labor union representatives, or other peace officers. (ECF No. 72-1 at 57).

On September 18, 2015, plaintiff received a letter scheduling an "administrative interview" for September 29, 2015. (ECF No. 72-1 at 60). The letter again notified plaintiff of the charges against him as well as his entitlement to representation. (ECF No. 72-1 at 60).

An hour-long investigatory interview was conducted on September 29, 2015. (ECF No. 75-2 at 3–4). Plaintiff's attorney was present. (ECF No. 75-2 at 3). Plaintiff was provided oral notice of the charges against him and the evidence then existing against him. (ECF No. 75-2 at 3).

On November 5, 2015, plaintiff was convicted of DUI and one count of battery. (ECF No. 72-1 at 112). The remaining charges were dropped. (ECF No. 69 at 3).

On November 17, 2015, CCSD sent plaintiff a "notice of disciplinary action— recommendation for dismissal." (ECF No. 72-1 at 116). The letter informed plaintiff of

defendant's intent to recommend plaintiff's termination. (ECF No. 72-1 at 116). The letter then outlined what rules CCSD alleged plaintiff violated:

> Grounds for these actions and the specific rules violated are CCSD Regulation 4343(I)(A):
>
> 4. Discourteous treatment of the public;
> 5. Violence or behavior that threatens violence directed at another person;
> 14. Conviction of a crime involving moral turpitude or immorality;
> 15. Failure to follow the rules and regulations of the District (specifically the General Orders of the CCSD Police Department).

(ECF No. 72-1 at 116). The letter contained a detailed description of the facts upon which these grounds were based, including plaintiff's testimony he provided at his September 29 interview. (ECF No. 72-1 at 117). Lastly, the letter notified plaintiff of his right to respond to the recommendation, including the option of an evidentiary hearing to determine if the facts and circumstances warranted the recommended disciplinary action. *Id.*

On January 7, 2016, the evidentiary hearing was held regarding CCSD's recommendation for plaintiff's dismissal. (ECF No. 73 at 1). Plaintiff's attorney, speaking on plaintiff's behalf, explained plaintiff's position regarding the termination. (ECF No. 73 at 2). The recommendation for dismissal was thereafter accepted and plaintiff was dismissed. (ECF No. 69 at 6).

Meanwhile POA filed a grievance regarding plaintiff's unpaid suspension. (ECF No. 72 at 6). On November 20, 2015, CCSD denied the grievance and upheld the unpaid suspension. (ECF No. 72 at 7). On November 30, 2015, POA again filed a grievance regarding the unpaid suspension and requested arbitration. *Id.* After the January 7 evidentiary hearing, POA filed a grievance contesting the dismissal on January 9, 2016. (ECF No. 72 at 8). On January 19, 2016, CCSD affirmed its decision to dismiss plaintiff. *Id.*

After being terminated, plaintiff, through POA, advanced the matter to arbitration for a final and binding resolution. (ECF No. 69 at 7). The arbitrator held that CCSD violated the collective bargaining agreement by suspending plaintiff without pay because plaintiff's crimes were not crimes of moral turpitude. (ECF No. 72 at 9). The arbitrator also held that CCSD did not prove just cause for termination. *Id.* Arbitration ultimately resulted in plaintiff being reinstated with backpay. (ECF No. 69 at 7).

. . .

## II. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the

opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

The parties have filed cross-motions for summary judgment on all remaining claims. The parties dispute whether plaintiff received due process during his suspension and termination, whether CCSD's procedures amount to an unconstitutional custom or practice, and whether individual defendants are entitled to qualified immunity. The court presently addresses these issues.

**a. Fourteenth Amendment Right to Procedural Due Process**

To state a claim for procedural due process, a plaintiff must allege: "(1) a liberty or property interest protected by the constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). An essential principle of due process is that a "deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 542 91985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). However, "due process is not a technical

James C. Mahan
U.S. District Judge

- 5 -

conception with a fixed content unrelated to time, place, and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.*

In the present case, plaintiff argues that he was deprived of a property interest without due process in two instances: first, his suspension without pay, and second, his termination. The court will examine both pre- and post-deprivation procedures to determine if, in total, plaintiff received due process.

The law clearly establishes, and parties do not dispute, that plaintiff has a property interest in his paycheck and continued employment. (ECF No. 78 at 10). Moreover, the parties do not dispute that plaintiff's property interest was deprived when defendants suspended plaintiff without pay and terminated him. *Id.* Therefore, the court must now consider whether defendants provided plaintiff the process to which he was due.

"It is well-established that because due process is a flexible concept, '[p]recisely what procedures the Due Process Clause requires in any given case is a function of context.'" *Franceschi*, 887 F.3d at 935 (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998)). To determine whether a public employer offered an employee adequate protection under the Due Process Clause, courts must weigh three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*1. Pre-deprivation Due Process*

Due process requires "an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Memphis Light Gast & Water Div. v. Craft*, 436 U.S. 1, 29 (1978). The purpose of a pre-termination hearing is to "provide an initial check against mistaken decisions and a determination of whether there are reasonable grounds to believe that the charges
James C. Mahan
U.S. District Judge

against the employee are true and support the proposed action. *Loudermill*, 470 U.S. at 545–56. It need not be elaborate, and it can vary, "depending on the importance of the interests involved and the nature of the subsequent proceedings." *Id.* At 545. Indeed, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster v. Board of Educ. of the Lynwood Unified Sch. Dist.,* 149 F.3d 971, 983 (9th Cir. 1998). For example, pre-deprivation hearings need not be held before an impartial decisionmaker, so long as the post-deprivation hearing is. *Walker v. City of Berkeley,* 951 F.2d 182, 184 (9th Cir. 1991).

Applying these principles to the present case, the court concludes that plaintiff's pre-suspension due process rights were satisfied. Due process in the period prior to deprivation requires only notice of the charges and an opportunity to respond. *Loudermill,* 470 U.S. at 542. Plaintiff was granted both protections. By plaintiff's own admissions, plaintiff met with defendant Ketsaa for ten minutes before he was suspended without pay. During the meeting, plaintiff was informed of the charges against him. Plaintiff did not deny these charges. After the meeting, plaintiff received a letter from defendant Ketsaa on September 9, 2015. The letter also summarized the charges against plaintiff.

It is true that plaintiff's interest in continued employment is substantial and weighs in favor of greater procedural safeguards. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("[T]he significance of the private interest in retaining employment cannot be gainsaid," in light of the "severity of depriving a person of the means of livelihood."). The Supreme Court has cautioned, however, that courts must consider the length and finality of the deprivation. *Gilbert v. Homar*, 520 U.S. 924, 932 (1997). For example, where a demoted employee ultimately prevails through internal grievance procedures and is awarded reinstatement with full back pay, the private interests at stake diminish relative to the other *Mathews* factors. *See Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985) ("[W]e conclude that, on balance, the grievance procedure provided adequate due process . . . ."). Here, the court finds that although plaintiff's interest in his paycheck is substantial, this interest alone does not outweigh the remaining two *Mathews* factors, as the court must consider plaintiff's ultimate reinstatement with backpay.

Under the second *Mathews* factor, the court finds that the governmental interests at stake are significant. The Supreme Court has recognized that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Gilbert v. Homar*, 520 U.S. 924, 932 (1997). The Ninth Circuit has extended this reasoning to the context of the public school, where school teachers occupy positions of "great public trust and high public visibility." *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1177 (9th Cir. 1998). Although plaintiff did not have felony charges filed against him, plaintiff, as a police officer employed by a school district, undoubtedly occupies a position of great public trust and visibility. Plaintiff's status also implicates governmental interests including upholding the integrity of the school system as well as that of CCSD Police Department. Accordingly, the governmental interests at stake are great and weigh against a finding that more process was required.

As to the third and final *Mathews* factor, the court finds there was no obvious risk of erroneous suspension. Where there is an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted," the state may be justified in delaying "the opportunity to be heard until after the initial deprivation." *FDIC v. Mallen*, 486 U.S. 230, 240 (1988). "[W]hen a state has 'probable cause to believe' that a state employee's continuing employment will jeopardize an important governmental interest, there is the required assurance that the deprivation is not baseless or unwarranted." *Jones v. City of Modesto*, 408 F. Supp. 2d. 935, 952 (E.D. Cal. 2005) (quoting *Barry v. Barchi*, 443. U.S. 55, 65 (1979)). Moreover, "the Due Process Clause does not require "that all governmental decisionmaking comply with standards that assure perfect, error-free determinations." *Yagman v. Garcetti*, 852 F.3d 859, 866 (9th Cir. 2017) (internal quotations omitted).

Here, defendants based their decision to suspend plaintiff on the police department's finding of probable cause to arrest plaintiff for six crimes. Moreover, the purpose of a pre-deprivation hearing is to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at

545–46. In *Mustafa v. Clark Cty. Sch. Dist.,* 157 F.3d 1169 (9th Cir. 1998), the Ninth Circuit upheld the suspension of a public-school teacher without a pre-deprivation hearing based on a student's allegations of open and gross lewdness. While recognizing that the suspension was not based on an independent determination of probable cause that a serious crime had been committed, the Ninth Circuit recognized that the decision to suspend was not "baseless or unwarranted." *Id.* The Ninth Circuit found the victim's police report and subsequent discussion about the allegations reasonably supported the suspension. *Id.*

While defendants' decisions to suspend and terminate plaintiff were ultimately found to be in error, that error was not obvious at the outset, especially in light of the government's substantial interest in making a quick decision to protect the integrity of CCSD Police Department. Moreover, the erroneous deprivation was addressed and resolved in the post-deprivation hearing. This is exactly what due process protects.

Plaintiff argues that defendant Ketsaa's concession that he did not provide a "hearing" prior to suspending plaintiff without pay proves that plaintiff did in fact not receive a hearing. However, defendant Ketssa's understanding of what is or what is not a hearing is not dispositive. Whether or not a "hearing" occurred for purposes of pre- and post-deprivation due process is a question of law. *Mathews,* 424 U.S. at 333–36 ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.") (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). The facts of what occurred during the September 9 meeting are undisputed. It is based on these undisputed facts that the court finds the meeting amounted to a "hearing" that satisfied pre-deprivation due process under the circumstances.

Plaintiff also argues that the "notice of disciplinary action – recommendation for dismissal and immediate suspension without pay pending recommendation for dismissal" he received on November 17, 2015, was in fact a termination, effective immediately. (ECF No. 69 at 5). Plaintiff argues the January 7 evidentiary hearing was then, in fact, a "(de facto) post-termination hearing." (ECF No. 69 at 6–7). However, the undisputed facts do not support this conclusion. In the January 7 hearing, plaintiff's representative stated that it was a "Skelly

Loudermill hearing." (ECF No. 73 at 1). Plaintiff's representative continued, "[plaintiff] hasn't been terminated yet. There's no grievance to file yet." (ECF No. 73 at 1). Moreover, it is undisputed that plaintiff availed himself of the post-termination grievance procedures and was reinstated with back pay. (ECF No. 69 at 7).

Therefore, in applying the balancing test established in *Mathews*, the court finds that plaintiff received all the process that was due to him prior to his suspension and termination.

   2. *Post-Deprivation Due Process*

The Supreme Court has decided that where there is no practical way to provide a pre-deprivation hearing, a post-deprivation hearing provided at a meaningful time and in a meaningful manner will suffice to satisfy the requirements of due process. *Parratt v. Taylor,* 451 U.S. 527, 538 (1981). The less the pre-deprivation process, the greater the post-deprivation process must be. *Cassim v. Bowen,* 824 F.3d 791, 798 (9th Cir. 1987).

Moreover, "[a] public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." *Armstrong v. Meyers,* 964 F.2d 948, 950 (9th Cir. 1992). Grievance and arbitration procedures are "a universally accepted method of resolving employment disputes." Thus, "the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great." *Id.* When a collective bargaining agreement provides for an adequate grievance and arbitration procedure, even if the procedure is solely available at the discretion of the union, that is sufficient process. *Id.* At 951.

As discussed above, plaintiff received adequate pre-deprivation due process. The parties do not dispute that the post-deprivation due process was extensive and fair. Ultimately, through these procedures, plaintiff was reinstated to his position with backpay. The court holds that the post-deprivation procedures satisfied due process.

   **b. Remaining issues**

Therefore, because the court finds there was no due process violation, the court must also find that the facts do not support plaintiff's 42 U.S.C. § 1983 claim for an unconstitutional

custom, policy, or practice. The court need not also determine whether defendants are protected by qualified immunity or whether they are individually liable.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 72) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (ECF No. 69) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED March 26, 2019.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE